940 F.2d 384
 6 Indiv.Empl.Rts.Cas. 1231
 David BLANKENBAKER, Appellant,
v.
McCOOK PUBLIC POWER DISTRICT; Stanley C. Goodwin,
individually and in his official capacity; Claude Cappell;
Dean Dack; James Gohl; James Waddell; Willis Roethemeyer;
Ray Tillotson; Roger Messinger, individually and in their
official capacities, Appellees.
 No. 90-2994.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1991.
Decided Aug. 6, 1991.
 
 Thom K. Cope, Lincoln, Neb., for appellant.
 Steven E. Guenzel, Lincoln, Neb., for appellees.
 Before LAY, Chief Judge, and HEANEY and BRIGHT, Senior Circuit Judges.
 HEANEY, Senior Circuit Judge.
 
 
 1
 A jury found that McCook Public Power District (McCook) violated 42 U.S.C. Sec. 1983 by discharging David Blankenbaker without providing him the due process required under the governing "Employee Agreement" and the Constitution and awarded Blankenbaker $50,000 in damages. The district court ordered judgment notwithstanding the verdict, and Blankenbaker appeals from that order. We reverse and reinstate the jury verdict.[1]
 
 BACKGROUND
 
 2
 McCook, a public employer, employed Blankenbaker as a director of operations. An Employee Agreement, effective from October 14, 1988 through October 31, 1989, and signed by McCook's president and the Employees Group chairman, governed their employment relationship. After an executive committee decided to terminate Blankenbaker, McCook notified Blankenbaker in writing that his termination was effective December 1, 1988. The record does not indicate that Blankenbaker was provided any pre-termination warning or probationary period nor any post-termination grievance hearing.[2] In August 1989, Blankenbaker brought this suit against McCook, alleging that McCook deprived Blankenbaker of his property interest in his employment without due process of law.
 
 
 3
 At trial, McCook moved to dismiss the suit after Blankenbaker presented his case, claiming that Blankenbaker had failed to show a property interest in his job. Despite expressing its inclination that Blankenbaker was an "at will" employee with no property interest in his employment, the district court denied the motion. After presenting its evidence, McCook again moved the court to dismiss the case or direct the jury to return a verdict for McCook. The court did not rule on these motions. Instead, it instructed the jury to decide whether Blankenbaker was afforded due process and whether he suffered damage as a result of his discharge.[3] The jury found for Blankenbaker, awarding $50,000 in damages. McCook filed its motion for judgment notwithstanding the verdict, which the court granted on the basis that Blankenbaker was employed at will.
 
 DISCUSSION
 
 4
 Because McCook employed Blankenbaker in Nebraska, both parties agree that Nebraska law controls this case. See Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law."); see also Weeks v. Board of Educ., 204 Neb. 659, 663, 284 N.W.2d 843, 846 (1979) (Supreme Court of Nebraska stating this rule of law). In addition, under Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we must review de novo the district court's state law determinations.
 
 
 5
 The United States Supreme Court has recognized, and the Supreme Court of Nebraska has concurred, that "[t]o have a property interest in employment, a person must have a legitimate claim of entitlement to it." Johnston v. Panhandle Coop. Assoc., 225 Neb. 732, 408 N.W.2d 261, 269 (1987) (citing Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Typically, this property interest arises from regulatory or contractual limitations on the employer's ability to terminate an employee. Id. 408 N.W.2d at 265. When such a property interest exists, the employee is entitled to a hearing or some related form of due process prior to termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).
 
 
 6
 Blankenbaker contends that a property interest in his employment was created by Article 2, section 2 of the Employee Agreement, which reads:The EMPLOYER reserves the ... right to hire, promote or not promote, suspend, discharge for cause, transfer, relieve employees from duty because of lack of work or other legitimate reasons;
 
 
 7
 (emphasis added). Later in the same paragraph the Agreement repeats the "discharge for cause" phrase.
 
 
 8
 The only question before us is whether the "discharge for cause" language in the Employee Agreement prohibits McCook from firing Blankenbaker without cause.[4] Relying on Johnston v. Panhandle Cooperative Association, 225 Neb. 732, 408 N.W.2d 261 (1987), the district court ruled that the contractual language did not prevent McCook from discharging Blankenbaker without cause. In Johnston, the Supreme Court of Nebraska held that language in the employee handbook was not definite enough to constitute an offer of a unilateral contract governing job termination.[5] 225 Neb. at 741, 408 N.W.2d at 267-68. The Nebraska court noted that the handbook in question provided no disciplinary proceedings short of termination, did not provide a post-termination grievance procedure, and did not state any restrictions on the employer's right to discharge. 225 Neb. at 741, 408 N.W.2d at 268. The employee handbook did list six specific rules, which, if violated, would provoke "dismissals for cause." Nowhere in the handbook, however, was there an implication that an employee could be discharged only for cause. Instead, the six specific rules were aimed at particularly egregious conduct, which the employer wanted to highlight and thereby emphasize through reverse illustration the sort of employee conduct that it desired.
 
 
 9
 Here, unlike Johnston, the Employee Agreement expressly restricted McCook's right to discharge by including the "discharge for cause" phrase. Moreover, unlike the handbook in Johnston, the Employee Agreement specifically provided for a grievance procedure to resolve any disagreement over the interpretation and application of the Employee Agreement.[6] Additionally, as noted above, Article II, section 2 of the Employee Agreement provided that an employee could be "discharge[d] for cause [or] ... relieve[d] ... from duty because of lack of work or other legitimate reasons." The phrase "lack of work or other legitimate reasons" refers back to the "discharge for cause" provision and explains the type of cause which the Employee Agreement intended would justify a dismissal. Because the Employee Agreement repeats the "discharge for cause" condition on two occasions, includes the explanatory language "lack of work or other legitimate reasons," and provides a grievance procedure to resolve disputes over the interpretation of the Agreement, we find that the Agreement confers on the employee a property interest in his job.
 
 
 10
 The location of the "discharge for cause or other legitimate reasons" condition within the Employee Agreement further compels our holding. The section of the Employee Agreement immediately following the discharge for cause section states:
 
 
 11
 Section 3. Recognition of Management Rights. The EMPLOYEES GROUP recognizes the express provisions of the Agreement as constituting the only limitations, other than limitations of law, upon the EMPLOYER's right to manage its business. All management rights not curtailed or surrendered by this Agreement are reserved to the EMPLOYER, and the EMPLOYER has the right to take any steps necessary to maintain efficient and profitable operations, subject only to the express provisions of this Agreement.
 
 
 12
 (emphasis in original). Because this section of the Employee Agreement refers to the discharge for cause condition as a limitation upon McCook, it demonstrates that McCook contractually curtailed its power to terminate an employee at will. The Agreement's recognition of the "discharge for cause" phrase as a limitation on McCook's rights convinces us that Blankenbaker could be discharged only for cause.
 
 
 13
 If McCook's employees could be terminated without cause, there would be no limitation to speak of, because Nebraska law clearly provides that absent statutory or contractual correction, an employee is terminable at will. See, e.g., Jeffers v. Bishop Clarkson Memorial Hosp., 222 Neb. 829, 387 N.W.2d 692, 695 (1986) (when employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability) (citation omitted) (emphasis in original). Given Nebraska's baseline rule, if the limitation of "discharge for cause" was not to have legal effect, then it was absolutely unnecessary to include it in the Employee Agreement in the first place.[7] Correspondingly, the Employee Agreement's "discharge for cause" clause constitutes a contractual correction of Nebraska's employee-at-will rule.
 
 
 14
 The Supreme Court of Nebraska has not had occasion to interpret a "discharge for cause" provision. It has, however, discussed the conditions under which the employee-at-will assumption can be altered and has ruled on several occasions that circumstances less definite than that before us could modify the employment-at-will rule. See Stiles v. Skylark Meats, Inc., 231 Neb. 863, 438 N.W.2d 494, 496 (1989) (employment agreement that restricted employee termination "only for breach of the terms [of the agreement] or for other good cause" required proof that good cause existed for employee discharge); Hebard v. AT & T, 228 Neb. 15, 421 N.W.2d 10, 11-12 (1988) (oral representations can modify employee-at-will status); Mueller v. Union Pacific Ry., 220 Neb. 742, 371 N.W.2d 732, 739 (1985) (termination-at-will rule subject to modification by promises outside the employment agreement); Sinnett v. Hie Food Prod., Inc., 185 Neb. 221, 174 N.W.2d 720, 722 (1970) (where an agreement provides for a bonus for continuous service which is terminated by the employer through no fault of the employee, employee must be compensated unless discharged for good cause); cf Stratton v. Chevrolet Motor Div., 229 Neb. 771, 428 N.W.2d 910, 913 (1988) (a bulletin mailed nationwide to local offices suggesting guidelines for management to follow in dealing with employees did not modify employee-at-will rule).
 
 
 15
 While Nebraska case law has not interpreted the phrase "discharge for cause," in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), "the [Supreme] Court concluded that because the [federal] employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection." Bishop v. Wood, 426 U.S. 341, 345 n. 8, 96 S.Ct. 2074, 2078 n. 8, 48 L.Ed.2d 684 (1976) (citing Arnett, 416 U.S. at 151-152, 94 S.Ct. at 1642-1643). Similarly, this court has held that because an employee could be dismissed only for cause, the employee "had a property interest entitling him to procedural due process." Kennedy v. Robb, 547 F.2d 408, 413 (8th Cir.1976) (applying Missouri law).
 
 
 16
 Moreover, unlike at least one other jurisdiction, see Gladden v. Arkansas Children's Hosp., 292 Ark. 130, 728 S.W.2d 501 (1987), Nebraska has never expressly held that employment-at-will status prevails unless there is an express contractual provision against termination except for cause only. A review of other jurisdictions reveals that courts have found a discharge-for-cause-only employment situation based on far less explicit language than that before us. See, e.g., Pugh v. See's Candies, Inc., 116 Cal.App.3d 311, 171 Cal.Rptr. 917, 926-27 (1981) (parties can impliedly agree that employment contracts are terminable only for good cause); Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880, 890 (1980) (oral comments that if employee is doing his job he will not be discharged results in employment terminable only for cause); Obey v. McFadden Corp., 138 Mich.App. 767, 360 N.W.2d 292, 297 (1984) (policy manual language pledging that "discharge would be used only as a last resort established a 'good cause' employment contract."); Weiner v. McGraw-Hill, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 197, 443 N.E.2d 441, 445 (1982) (cause of action can be based on oral assurance that employee would not be discharged without cause). This precedent, both federal and state, further persuades us that under Nebraska law the "discharge for cause" language granted Blankenbaker a property interest in his job.
 
 CONCLUSION
 
 17
 Based on the Employee Agreement, Blankenbaker possessed a property interest in his job and could be terminated only for cause. We therefore reverse the district court's judgment notwithstanding the verdict and reinstate the jury verdict and award.
 
 
 
 [1]
 McCook does not dispute on appeal that if Blankenbaker has a property interest in his job, he is entitled to the $50,000 damage award
 
 
 [2]
 Prior to his dismissal, Blankenbaker had been placed on paid leave status. He received no indication, however, that he was being considered for termination while he was on paid leave. The letter notifying Blankenbaker of his termination was dated December 9, 1988, although it informed Blankenbaker that his effective termination date was December 1, 1988
 
 
 [3]
 McCook requested the court to instruct the jury that damage could only be found if Blankenbaker had proven that with due process he would not have been fired. The court denied this request, and McCook has not raised this issue on appeal
 
 
 [4]
 McCook does not dispute that the Employee Agreement is an enforceable contract
 
 
 [5]
 The Johnston handbook read:
 Dismissals For Cause
 The following rules are intended to cover matters of fact rather than matters of judgment where you might make an honest mistake.
 
 
 [1]
 Willful insubordination or disregard of duty
 
 
 [2]
 Dishonesty
 
 
 [3]
 Unauthorized or unreported absence from work
 
 
 [4]
 Use of beverage alcohol or illegal drugs on Company premises or Company time, or reporting for work under the influence
 
 
 [5]
 Conduct which may cause damage or embarrassment to the Company
 
 
 [6]
 Failure to comply with Company policy will be subject to dismissal
 To permit violation of these rules would, in fact, be an injustice to all employees and member-patrons.
 
 
 [225]
 Neb. at 737, 408 N.W.2d at 265
 
 
 [6]
 Article XVII of the Employment Agreement provides:
 ARTICLE XVII
 GRIEVANCE PROCEDURE
 SECTION 1. Definition. A grievance is hereby defined to be any disagreement concerning the interpretation or application of the specific and express provisions of this Agreement relating to wages, fringe benefits or working conditions. The grievance procedure shall not be used to change any provision of this Agreement.
 SECTION 2. Employee Representation. An aggrieved employee shall have the right to process his/her grievance individually, by the EMPLOYEES GROUP, and/or by an attorney at law.
 (Emphasis added).
 
 
 [7]
 See Brisbin v. E.L. Oliver Lodge No. 335, 134 Neb. 517, 529, 279 N.W. 277, 284 (1938) ("The terms of the collective agreement, as included in an individual labor contract, ought not to be construed narrowly and technically, but broadly, so as to accomplish its evident aims and protect both the employer and the employee." (quoting Rentschler v. Missouri P.R. Co., 126 Neb. 493, 253 N.W. 694, 695 (1934)))