49 F.3d 426
 98 Ed. Law Rep. 38
 LaDonna GEDDES, Appellant,
v.
NORTHWEST MISSOURI STATE UNIVERSITY, Dean L. Hubbard, Patt
Van Dyke, Robert G. Culbertson, Robert Sunkel, Danny L.
Marsh, Frank Strong, Edward H. Douglas, Robert Stanton,
Audra Kincheloe, Jane Pansing-Brown, Appellees.
 No. 94-2954.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1995.
Decided March 3, 1995.
 
 George Kapke, Independence, MO, argued, for appellant.
 Robert R. Ramond, Kansas City, MO, argued (William E. Quirk, Norris E. Greer and Claudia J. York, on the brief), for appellees.
 Before Richard S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and MURPHY, Circuit Judge.
 DIANA E. MURPHY, Circuit Judge.
 
 
 1
 LaDonna Geddes brought this 42 U.S.C. Sec. 1983 action against Northwest Missouri State University and certain individual university officials (collectively the University), alleging her due process rights were violated when the University failed to renew her employment contract. The parties agreed to a consolidated hearing on her motions for injunctive relief and the merits. After hearing plaintiff's evidence, the district court[1] granted the University's motion for judgment. We affirm.
 
 
 2
 Geddes was hired by the University in 1983 as dean of the newly founded School of Communications, with additional duties as a professor in the speech department. In 1986 the School of Communications was merged with the School of Fine Arts. Geddes did not receive the consolidated dean position; instead the University offered her the opportunity to continue teaching in the speech department. Geddes accepted.
 
 
 3
 Geddes asserts that she received lifetime tenure as a result of discussions with University president Dean Hubbard after the consolidation. She testified that she met with Hubbard several times and that he indicated she had not been offered the dean position because of "political problems" arising from the consolidation.[2] She claims that Hubbard told her she could teach at the University "the rest of [her] life if [she] wanted to." Tr. at 49. She chose not to litigate the consolidated dean selection in part because of Hubbard's remark about job security. Id.
 
 
 4
 From time to time issues arose about her status prior to the eventual nonrenewal of her employment contract. In 1986 she received a memorandum from George English, then vice president of academic affairs, indicating she would receive a terminal contract the following year. She responded that president Hubbard had assured her that her job was secure, and the English memorandum was subsequently rescinded. In 1992 Kathie Leeper, chair of the speech department, asked Geddes if she intended to apply for tenure. Geddes told Leeper her agreement with president Hubbard meant she did not have to apply for tenure, and she asked Leeper for clarification. She later received a note from Leeper stating "You're clear--You don't have to."[3] Appellant's app. at 29. In 1993 Geddes was informed that she would receive a nonrenewable terminal contract for the 1993-94 academic year.
 
 
 5
 Each contract between Geddes and the University was limited to one academic year and explicitly stated that she was on a tenure track position.[4] Each contract was expressly subject to "the rules, regulations, policies, orders and procedures of the Board of Regents as set forth in the Faculty handbook." Appellees' app. at 17. The handbook, which she admitted receiving, states that oral employment contracts are not binding on the university. It further provides that faculty members on tenure track have probationary employment status, and that tenure decisions are at the sole discretion of the board of regents.
 
 
 6
 At the close of appellant's evidence the district court granted the University's motion for judgment, finding that Hubbard had not promised Geddes lifetime employment. The court also concluded that even if "de facto" tenure could be shown by evidence of an objectively reasonable expectation of continued employment, Geddes had not established that her expectation was reasonable. Judgment was entered in favor of appellees on July 31, 1994.[5]
 
 
 7
 Due process rights do not attach to a nontenured teacher's employment contract unless the teacher can show the existence of a liberty interest[6] or a property interest in continued employment. Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698-99, 33 L.Ed.2d 570 (1972); see also Bd. of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709-10, 33 L.Ed.2d 548 (1972); Cusumano v. Ratchford, 507 F.2d 980, 982 (8th Cir.1974), cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975). A property interest in continued employment cannot arise from a unilateral expectation; rather, an individual must have a legitimate claim of entitlement to it. Roth, 408 U.S. at 577, 92 S.Ct. at 2709. Absent unusual circumstances, a teacher in a position without tenure or a formal contract does not have a legitimate entitlement to continued employment. See Cusumano, 507 F.2d at 982.
 
 
 8
 Geddes asserts that Hubbard's promise of lifetime employment, reinforced by the 1986 and 1992 incidents confirming her understanding of their agreement, amounted to de facto tenure and gave rise to a legitimate expectation of continued employment at the University. The district court found, however, that Hubbard did not promise her lifetime employment. It found that while Hubbard may have assured Geddes in 1986 that she would not lose her job, this statement was intended to calm her apprehension that she would be terminated as a result of the consolidation. We review the district court's findings for clear error.[7] See Madison v. Frank, 966 F.2d 344, 345 (8th Cir.1992).
 
 
 9
 After a thorough review of the record, we conclude that the trial judge's finding that Hubbard did not promise Geddes lifetime employment is supported by the evidence. Since it was not clearly erroneous, it should be affirmed. Moreover, even assuming Hubbard had made such a promise, Geddes failed to demonstrate that her expectation of lifetime employment was reasonable. None of her annual contracts stated that she had tenure, and each was expressly limited to one academic year. Each was explicitly made subject to the University's written policies, with which Geddes was familiar. Those policies provide that oral employment contracts are not binding, that the tenure review process is initiated when an instructor submits a tenure application, and that the board of regents has the sole authority to grant tenure. Geddes established at best that she had a unilateral expectation that she would remain in the University's employ.[8] See Roth, 408 U.S. at 577, 92 S.Ct. at 2709. She did not demonstrate the existence of a legitimate expectation of continued employment and therefore had no constitutionally protected property right.
 
 
 10
 For these reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Joseph E. Stevens, Jr., Chief United States District Judge for the Western District of Missouri
 
 
 [2]
 According to Geddes, Hubbard told her that she was a better manager and had better credentials than the other candidate, appellee Robert Sunkel, but that "there were political problems [Hubbard] was confronted with in terms of numbers of years Dean Sunkel had been there and Dean Sunkel's bonding in the community [which Geddes] didn't have and all of the politics that are associated with any reorganization." Tr. at 48
 
 
 [3]
 At oral argument the University's counsel stated that he had informed the trial court before the hearing that Hubbard would testify that this note reflected the fact that Geddes would not be affected by a change in policy requiring new tenure track instructors to apply for tenure after six years of employment. Because the district court granted the motion for judgment at the close of appellant's evidence, Hubbard never testified, and counsel's statements are of course not evidence
 
 
 [4]
 The University has four faculty job classifications: tenure, tenure track, non tenure track, and special appointment. Tenure is defined as:
 an arrangement under which faculty appointments in a discipline within an institution of higher education are continued until the faculty member resigns, retires, is discharged for cause, is laid off pursuant to a reduction in force, becomes disabled or dies.... Tenure is not an entitlement but must be earned. It is the sole responsibility of the individual that he/she has met the criteria contained in [the faculty handbook].
 Appellees' app. at 24. An eligible faculty member initiates the tenure evaluation process by submitting a tenure application form.
 
 
 [5]
 On August 3, 1994, Geddes filed a timely notice of appeal, pursuant to 28 U.S.C. Sec. 1292(a)(1), from the district court's denial of her request for an injunction. On September 2 she moved this court for leave to amend the notice to include appeal from the entry of judgment. A similar motion was made before the district court on September 21. The written and oral arguments of the parties have focused entirely on the merits, and no objection has been made to the motion to amend. Under all the circumstances the motion to amend should be granted, and we consider this appeal from the final decision of the district court pursuant to 28 U.S.C. Sec. 1291
 
 
 [6]
 Geddes does not claim she has been deprived of a liberty interest
 
 
 [7]
 Relying on Fed.R.Civ.P. 50, Geddes argues that the evidence must be considered in the light most favorable to her. Rule 50 applies to matters tried by jury, however, and not to this case in which the district court acted as the finder of fact. See 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2523 (2d ed. 1994)
 The applicable rule here is Fed.R.Civ.P. 52(c), which allows the trial court to enter judgment on an issue upon which "a party has been fully heard." In ruling on a Rule 52 motion the trial court need not consider the evidence in a light favorable to the plaintiff and may render judgment for the defendant if it believes the plaintiff's evidence is insufficient to make out a claim. See Madison v. Frank, 966 F.2d 344, 345 (8th Cir.1992). A finding made pursuant to Rule 52(c) is reversible only if it is clearly erroneous. Price v. United States Navy, 39 F.3d 1011, 1021 (9th Cir.1995); Fed.R.Civ.P. Rule 52(c) advisory committee's note.
 
 
 [8]
 Geddes relies on Soni v. Board of Trustees, 513 F.2d 347 (6th Cir.1975), cert. denied, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), to support her argument that "extraordinary circumstances" surrounding her loss of the dean position gave rise to a legitimate expectation of continued employment despite the existence of the University's written tenure policy. Soni involved unique circumstances in which a nontenured professor's tenure application was favorably reviewed, but the tenure decision was deferred because he was not a United States citizen. He was subsequently assured he would be treated as a permanent employee and was afforded privileges usually enjoyed only by tenured faculty, such as the right to vote on tenure recommendations. The circumstances here are distinguishable, just as they were in Haimowitz v. University of Nevada, 579 F.2d 526 (9th Cir.1978) (distinguishing Soni and finding no extraordinary circumstances where a nontenured professor was assured by faculty members that he would receive tenure; professor was aware of the written tenure policy which indicated he was a probationary employee)