_____

No. 94-2818
_____

Valerie T. Akeyo,                    *
                                     *
          Appellant,                 *
                                     *
     v.                              *  Appeal from the United States
                                     *  District Court for the
James O'Hanlon; Birdie Holder;       *  District of Nebraska.
University of Nebraska at            *
Lincoln,                             *
                                     *
          Appellees.                 *


_____

          Submitted:  September 13, 1995

             Filed:  January 30, 1996
_____

Before MAGILL, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior
     Circuit Judges.

_____

HENLEY, Senior Circuit Judge.


     Valerie T. Akeyo appeals from a judgment of the district
court[1] entered after a bench trial in favor of the University of
Nebraska-Lincoln (university or UNL) and two of its officials, Dr.
James O'Hanlon, dean of UNL's Teacher's College, and Dr. Birdie
Holder, chairperson of the Department of Vocational and Adult
Education (department), on Akeyo's race, national origin,
retaliation, conspiracy and due process claims under 42 U.S.C.
§§ 1981, 1983, 1985(3), 20000e, and Neb. Rev. Stat. § 48-1101, et
seq.  We affirm.

--------------------

     [1]The Honorable David L. Piester, United States Magistrate
Judge for the District of Nebraska, sitting by consent of the
parties pursuant to 28 U.S.C. § 636(c).

Akeyo, a black female, was born in Africa. By letter of April 5, 1990, UNL offered Akeyo a position as an assistant professor with the department for the academic year 1990-91. The letter explained that the appointment was for a specific term as defined in the university's bylaws, a copy of which was enclosed. Section 4.4.2 of the bylaws provided:

> An "Appointment for a Specific Term" is a probationary appointment . . . for a term of one year, unless a longer term is specified . . . . An "Appointment for a Specific Term" shall carry no presumption of renewal, and will terminate at the end of the stated term, if written notice of non-reappointment is given to the appointee by the appropriate administrative officer or by the Board . . . .

Akeyo accepted the appointment. During the academic year Akeyo experienced difficulty with both students and staff. Although her term was renewed for the 1991-92 academic year, in a 1991 annual review Holder informed Akeyo of a number of concerns, the most important of which was Akeyo's relationship with students. In particular, Holder noted that

> [o]ver the last 10 weeks, I have had a steady stream of students in my office who have been concerned with the organization in your classroom, with their lack of understanding of what they are supposed to do, and with the lack of feedback on the papers that are turned back to them.

Holder also noted low student evaluations and informed Akeyo she would have to get the problem under control for "continued growth and success." Akeyo wrote a rebuttal to the review, which she sent to O'Hanlon. After consideration of the review and rebuttal and meeting with Akeyo, O'Hanlon wrote her that "[t]eaching is our primary responsibility" and her record did not demonstrate "satisfactory progress toward meeting the tenure requirements."

Akeyo's problems with staff and students continued during the summer and fall of 1991. On December 13, 1991, O'Hanlon and Holder sent Akeyo a letter notifying her that she would not be reappointed after the 1991-92 academic year because her "performance as a teacher ha[d] not been adequate to warrant continuation of [her] appointment in the College." Among other things, they noted that Akeyo had not "taken appropriate actions relative to the improvement of teaching as requested of you in your annual review for the 1990-91 academic year." Akeyo then filed a grievance with the university affirmative action office and complaints with the state and federal equal opportunity offices. A grievance committee found no evidence of racial discrimination, but concluded that Akeyo's complaints of discrimination played a part in the decision not to renew her contract.

On August 26, 1992, Akeyo and UNL executed a settlement agreement, which extended her "appointment for a specific term . . . through the 1992-93 academic year . . ., subject, however, to the possibility of non-renewal at the end of the 1992-93 academic year." The agreement provided that her term would not be renewed if, after evaluating her performance under factors customarily considered for faculty evaluations, a tenure committee concluded that the notice of non-renewal was warranted. In a December 2, 1992 letter, the five-member committee unanimously concluded that the notice was warranted because of "significant concerns in regard to teaching quality and outcome." The committee noted there was "no evidence that Dr. Akeyo had been responsive to student concerns, nor [had demonstrated] a systematic effort to improve her teaching."

Akeyo filed suit, alleging race and national origin discrimination, conspiracy, retaliation, and due process claims. After a six-day trial, the district court rejected the claims, noting that throughout the trial Akeyo displayed hostility and failed to take any responsibility for her problems. As to her

-3-

race, national origin, conspiracy and retaliation claims, the court found that Akeyo failed to prove that the university's stated reason for non-renewal - poor teaching performance - was pretextual. As to her due process claim, it was found that she had no protected property interest in continued employment because at all times she was a probationary employee.

On appeal, Akeyo first challenges the district court's finding that she did not prove the university's reason for non-renewal was a pretext for discrimination or retaliation. See St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2747 (1993). The finding of pretext is one of fact, subject to review only for clear error, and a "factual finding that is supported by substantial evidence on the record cannot be clearly erroneous." Ricks v. Riverwood Int'l Corp., 38 F.3d 1016, 1018 (8th Cir. 1994). In this case, as the court noted, the record is "replete" with support for the finding that Akeyo's contract was not renewed because of her teaching. Akeyo attempts to argue that the court committed clear error because it credited the university's evidence and discredited her evidence that she was a good teacher and had been harassed because of her race and origin. However, "[t]he district court was in the best position to judge the credibility of the witnesses in this case, and we will not upset its conclusion." Maness v. Star-Kist Foods, Inc., 7 F.3d 704, 708 (8th Cir.), cert. denied, 114 S. Ct. 2678 (1994).

Akeyo also argues that the district court ignored the grievance committee's conclusion that the notice of non-renewal was due, in part, to retaliation for her discrimination complaints. The court did not ignore the committee's conclusion, but expressly found that the trial evidence did not support the committee's conclusion that retaliation was a factor in the non-renewal. Where, as here, "an employer proves that its reason for terminating an employee was independent of the employee's exercise of protected rights, the termination will be deemed non-retaliatory." Id.

-4-

Moreover, "[e]ven if the protected conduct is a substantial element in the decision to terminate the employee, the employer will not be liable if the employee would have been discharged in the absence of the protected conduct."  Id.

Akeyo's argument that the district court erred in rejecting her due process claim is also without merit.  As this court has recently stated:

> Due process rights do not attach to a nontenured teacher's employment contract unless the teacher can show the existence of a liberty or property interest in continued employment.  A property interest in continued employment cannot arise from a unilateral expectation; rather, an individual must have a legitimate claim of entitlement to it.  Absent unusual circumstances, a teacher in a position without tenure or a formal contract does not have a legitimate entitlement to continued employment.

Geddes v. Northwest Missouri State Univ., 49 F.3d 426, 429 (8th Cir. 1995) (footnote and citations omitted).

Here, no unusual circumstances give rise to a property interest.  Akeyo's offer expressly stated that the offer was an "Appointment for a Specific Term" as defined in the university bylaws.  The bylaws could not create an expectation of entitlement because section 4.4.2 provided that an "Appointment for a Specific Term" was a probationary status position, "carr[ying] no presumption of renewal."  See id. (no expectation of continued employment where handbook provided faculty member was probationary employee).

Also, contrary to Akeyo's suggestion, the settlement agreement did not give rise to a property interest.  The agreement merely "extend[ed] [her] appointment for a specific term . . . through the

-5-

1992-93 academic year, subject to the possibility of non-renewal." Although, as Akeyo notes, "the agreement detailed with specificity all the procedures that would be followed in review," as the district court noted, citing <u>Stow v. Cochran</u>, 819 F.2d 864, 866-67 (8th Cir. 1987), "the mere existence of procedural steps for such a review does not, by itself, create the necessary property interest; the process must create an expectancy of continued employment, not merely an expectation of a review prior to termination."[2]

Last, Akeyo argues that the district court erred in failing to address a state law breach of contract claim. In her complaint, Akeyo alleged that the university had breached the settlement agreement, causing her damages. We agree with the university that the reason the court did not address the claim is because Akeyo abandoned it at trial. The pretrial order states that Akeyo disclaimed any damages from any alleged breach of the settlement agreement. Under state law "[i]n order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, [and] damage . . . ." <u>Production Credit Ass'n of Midlands v. Eldin Haussermann Farms, Inc.</u>, 529 N.W.2d 26, 32 (Neb. 1995). Moreover, Akeyo's counsel did not mention the claim in opening argument, and in closing argument,

---

[2]In her brief, Akeyo cites <u>Wilson v. Robinson</u>, 668 F.2d 380 (8th Cir. 1981), in support of her argument that the settlement agreement created a property interest. However, in <u>Stow</u>, 819 F.2d at 867, citing, <u>e.g.</u>, <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983), <u>modified on other grounds by</u> <u>Sandin v. Connor</u>, 115 S. Ct. 2293 (1995), we held that <u>Wilson</u> "ha[d] been effectively overruled insofar as it holds that 'procedural rights' alone can create an independent property right to continued employment when none would otherwise exist."

In her reply brief, Akeyo also raises a due process liberty interest argument, which she did not raise in the district court. As a general rule, we do not address arguments raised for the first time in a reply brief and there are no reasons in this case to depart from this rule. <u>See</u> <u>Giove v. Stanko</u>, 49 F.3d 1338, 1344 n.4 (8th Cir. 1995).

in response to the university's argument that the settlement agreement constituted a release of Akeyo's discrimination and retaliation claims, Akeyo's counsel told the court that she could pursue the claims because the agreement was "null and void." Under state law, rescission of a contract "implies extinction of the contract which leaves the parties without a right of recovery on the contract itself." Hoeft v. Five Points Bank, 539 N.W.2d 637, 644 (Neb. 1995).

For the reasons stated, the appealed judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.