_____

No. 95-1600
_____

Guatam Batra; Michael Resch;      *
Nisar Shaikh,                      *
                                   *
     Plaintiffs - Appellants,      *
                                   *   Appeal from the United States
     v.                            *   District Court for the
                                   *   District of Nebraska.
Board of Regents of the            *
University of Nebraska; Graham     *
B. Spanier; Stanley R. Liberty,    *
                                   *
     Defendants - Appellees.       *

                                _____

               Submitted:  October 19, 1995

                   Filed:  March 26, 1996
                                _____

Before RICHARD S. ARNOLD, Chief Judge, WHITE,[*] Associate Justice (Ret.),
     and LOKEN, Circuit Judge.
                                _____

LOKEN, Circuit Judge.

     The plaintiffs in this lawsuit are former tenure-track assistant
professors at the University of Nebraska-Lincoln.  They brought this action
under 42 U.S.C. § 1983 alleging that the Board of Regents and certain
University officials (collectively the "University") violated plaintiffs'
due process and equal protection rights by denying tenure and refusing to
renew their employment contracts.  Plaintiffs appeal the district court's[1]
dismissal of

_____

[*]The HONORABLE BYRON R. WHITE, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

[1]The HONORABLE RICHARD G. KOPF, United States District Judge
for the District of Nebraska.

their claims, granted after the University moved for summary judgment. We affirm.

## I.

Plaintiffs were appointed Assistant Professors in the College of Engineering and Technology between 1985 and 1989. These were appointments to "specific term," tenure-leading faculty positions. Each plaintiff received an appointment letter enclosing a copy of the University's Board of Regent Bylaws. Section 4.4.2 of the Bylaws, which is critical to this appeal, provides in part:

> **Appointments for a Specific Term.** An "Appointment for a Specific Term" is a probationary appointment as a faculty member with academic rank of assistant professor or above for a term of one year, unless a longer term is specified in the contract required by Section 4.3. In no event shall the specific term exceed three years. An "Appointment for a Specific Term" shall carry no presumption of renewal, and will terminate at the end of the stated term, if written notice of non-reappointment is given to the appointee . . . .

The appointment letters also advised that the appointee would be considered for a "continuous appointment" (tenure) after no more than seven years of specific term employment.

Each plaintiff applied for tenure in 1991 or 1992. Each was denied tenure and was notified that his specific term appointment would not be renewed. Plaintiffs filed a grievance with the University's Grievance Committee. The Committee concluded that plaintiffs did not warrant tenure but recommended they be given two more years to earn tenure. The Chancellor of the University, appellee Graham Spanier, declined this recommendation and terminated plaintiffs at the end of the 1993-1994 academic year.

Plaintiffs then commenced this action, claiming that the University denied them procedural due process, in particular by

failing to timely provide them with copies of a December 1980 College of Engineering and Technology document entitled, "Criteria for Promotion and Tenure." After the district court denied plaintiffs' motion for a preliminary injunction, they amended their complaint to add the following equal protection claim:

> 29. That Plaintiffs were members of a protected class, tenure-track faculty at the University of Nebraska.
>
> 30. That the individual Defendants treated [Plaintiffs] differently than similarly situated class members (ie: tenure-track faculty) by withholding information from them necessary for them to properly achieve tenure.

The University then moved for summary judgment based upon the record from plaintiffs' preliminary injunction motion plus additional affidavits. The district court granted summary judgment on the due process claim, concluding plaintiffs have no protected property interest. The court dismissed the equal protection claim because plaintiffs had not alleged that they "were victimized based on some suspect classification" and had not cured this defect in responding to the University's summary judgment motion. Plaintiffs challenge both rulings on appeal. They further argue that the district court should have allowed them to amend their equal protection claim.

## II.

Plaintiffs' procedural due process claim fails unless they had a protected liberty or property interest in their specific term appointments as tenure-track assistant professors. See Board of Regents v. Roth, 408 U.S. 564 (1972); Perry v. Sindermann, 408 U.S. 593 (1972). The University's alleged failure to follow its own procedural rules and regulations did not, without more, give rise to a protected liberty or property interest. See Swenson v.

Trickey, 995 F.2d 132, 134 (8th Cir.), cert. denied, 114 S. Ct. 568 (1993); Stow v. Cochran, 819 F.2d 864, 867-68 (8th Cir. 1987).

Plaintiffs did not assert a liberty interest in continued employment and most surely did not have one. See Roth, 408 U.S. at 574 n.13. For a property interest to arise, a government employee must have a "legitimate claim of entitlement" to continued employment, as opposed to a mere subjective expectancy. Id. at 577. "Absent unusual circumstances, a teacher in a position without tenure or a formal contract does not have a legitimate entitlement to continued employment." Geddes v. Northwest Mo. State Univ., 49 F.3d 426, 429 (8th Cir. 1995).

Section 4.4.2 of the Board of Regents Bylaws clearly states that plaintiffs' appointments were probationary and carried no presumption of renewal. The very purpose of this type of tenure regulation is to avoid an ambiguous relationship that may, in hindsight, be construed as "de facto tenure." See Cusumano v. Ratchford, 507 F.2d 980, 984 (8th Cir. 1974), cert. denied, 423 U.S. 829 (1975). Applying Geddes, we held in Akeyo v. O'Hanlon, 75 F.3d 370, 374 (8th Cir. 1996), that a University of Nebraska assistant professor did not have a property interest because section 4.4.2 of the Bylaws "could not create an expectation of entitlement." Akeyo controls the due process issue in this case.

Plaintiffs argue that a statement in section 4.4.2 -- "In no event shall the specific term exceed three years" -- created a reasonable expectation of special status when their specific term appointments were renewed beyond three years. We disagree. The appointment letters stated, consistent with section 4.10 of the Bylaws, that the specific term appointments could not exceed a total of seven full academic years. This put plaintiffs on notice that their probationary appointments could last up to seven years before they would be considered for tenure. Like the district court, we find no unusual circumstances in the record that would

entitle plaintiffs to a protected property interest in their non-tenured appointments.

## III.

Appellants next argue that the district court erred in dismissing their equal protection claim. The claim is that the University treated them differently than other similarly situated tenure-track assistant professors by withholding information necessary to achieve tenure, principally the College of Engineering's "Criteria for Promotion and Tenure" document.[2] The district court dismissed this claim because plaintiffs failed to allege or prove that they were denied tenure "based on any suspect classification." On appeal, plaintiffs argue that their complaint did state a valid equal protection claim, or that they should have been allowed to amend it.

### A.

We have some difficulty with the district court's reasoning. That court observed that a class consisting of tenure-track assistant professors "neither involve[s] fundamental rights, nor proceed[s] along suspect lines" such as race or sex or national origin. But the equal protection clause does not only protect "fundamental rights," and does not only protect against "suspect classifications" such as race. It also protects citizens from arbitrary or irrational state action. Most equal protection cases involve facial or as-applied challenges to legislative action. Absent a "suspect classification" such as race, courts review legislative actions under the highly deferential "rational basis" standard. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446-47 (1985).

---

[2]At oral argument, counsel for plaintiffs could not explain how such information would have helped them achieve tenure.

Plaintiffs in this case do not challenge legislative action; they concede that the Board of Regent Bylaws are unobjectionably even-handed. Indeed, plaintiffs allege that University officials violated section 4.5 of the Bylaws by withholding vital tenure information that must be "published and disseminated to the faculties," with the result that plaintiffs were treated differently than other similarly situated members of the tenure-track faculty. If that type of "withholding," without more, were enough to trigger a "rational basis" analysis of why the information was withheld, virtually every negligent governmental action could be converted into an equal protection violation. Thus, courts have consistently required equal protection plaintiffs to allege and prove something more than different treatment by government officials. As the Supreme Court said in Snowden v. Hughes, 321 U.S. 1, 8 (1944):

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.

Snowden confirms that the something more required of the plaintiff in this kind of equal protection case is the presence of an unlawful intent to discriminate against the plaintiff for an invalid reason. Plaintiff need not prove that another fundamental right was trampled -- the right to equal protection of the laws is itself fundamental. Nor need plaintiff prove that he or she was victimized by a "suspect classification" such as race. But the discrimination must be intentional, and the government's motive must fail to comport with the requirements of equal protection. See Dickens v. Ashcroft, 887 F.2d 895 (8th Cir. 1989) (per curiam).

Judicial articulations of this concept have not been uniform, and most have focused on whether plaintiff was a member of a

victimized class.  See Albright v. Oliver, 975 F.2d 343, 348 (7th Cir. 1992) ("you must be singled out because of your membership in the class, and not just be the random victim of governmental incompetence"), aff'd on other grounds, 114 S. Ct. 807 (1994); Booher v. United States Postal Serv., 843 F.2d 943, 944 (6th Cir. 1988) ("[t]he equal protection concept does not duplicate common law tort liability by conflating all persons not injured into a preferred class"); Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986) ("[t]he equal protection argument fails here because the wrong is not alleged to be directed toward an individual as a member of a class or group singled out for discriminatory treatment").  But the relevant prerequisite is unlawful discrimination, not whether plaintiff is part of a victimized class.  As Justice Frankfurter explained in his concurring opinion in Snowden, 321 U.S. at 15:

> The talk in some of the cases about systematic discrimination is only a way of indicating that in order to give rise to a constitutional grievance a departure from a norm must be rooted in design and not derive merely from error or fallible judgment.

This distinction was also discussed by Chief Judge Posner in Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995), which held that the refusal to renew a liquor license may be actionable under the equal protection clause if defendants' action "was a spiteful effort to 'get' [plaintiff] for reasons wholly unrelated to any legitimate state objective."

Thus, in our view, the key requirement is that plaintiff allege and prove unlawful, purposeful discrimination.  Having restated the relevant inquiry in this manner, we nonetheless agree with the district court's conclusion:  plaintiffs' equal protection pleading failed to state a claim, and the evidence they submitted in response to the University's motion for summary judgment did not cure this fatal defect.  Plaintiffs alleged only that significant

tenure-track information was withheld from them.  They did not allege who did the withholding, nor why the information was withheld.  Nor did they make any showing that the University irrationally classifies tenure-track faculty into different groups in considering tenure applicants.  Thus, plaintiffs' pleadings and proof are consistent with the proposition that they were the victims of random government incompetence.  Their equal protection claim was properly dismissed.

**B.**

Finally, plaintiffs argue that the district court should have invited them to file a second amended complaint to avoid dismissal of the equal protection claim.  Leave to amend lies within the sound discretion of the district court.  See Izaak Walton League of Am. v. St. Clair, 497 F.2d 849, 854 (8th Cir.), cert. denied, 419 U.S. 1009 (1974).  We find no indication plaintiffs raised this issue in the district court.  Nor do they explain on appeal how they would amend the complaint to save this claim.  After permitting plaintiffs to add the equal protection claim by a first amended complaint, the district court did not abuse its discretion by not inviting yet another attempt to plead what appeared to be a clearly meritless claim.  See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.