# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1128

_____

Nicholas Brandt and Debbie Hux,     *
       *
       Appellants,     *
       *
       *     Appeal from the United States
       v.     *     District Court for the
       *     Western District of Arkansas.
Boyce R. Davis, City of Prairie Grove,     *
Arkansas, Andrew Bain, in his capacity     *
as Prairie Grove Mayor and in his     *
individual capacity, and Robin Casey,     *
       *
       Appellees.     *

_____

Submitted: June 18, 1999
Filed:        September 15, 1999

_____

Before BOWMAN and HEANEY, Circuit Judges, and LONGSTAFF,[1] District Judge.

_____

RONALD E. LONGSTAFF, District Judge.

      Debbie Hux and her son Nicholas Brandt appeal the district court's[2] grant of summary judgment in favor of defendants in their civil rights suit against the City of

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

Prairie Grove (the "City"), its police chief Robin Casey, its mayor Andrew Bain, and its attorney, Boyce Davis. We affirm the judgment of the district court.

I.

At times relevant to the instant appeal, Hux and Brandt lived in Prairie Grove, Arkansas. Plaintiffs' neighbor, Loyd Thurman, kept construction equipment on his lot, a practice that Hux believed violated city zoning laws. In early 1995, Hux went before the Prairie Grove city council to request enforcement of the zoning laws against Thurman. The city council did not act on her request. Instead, some city council members laughed at her and suggested the problem was her own. Hux pursued enforcement of the alleged zoning ordinance through other means, including circulating a petition requesting that the City enforce the zoning laws with regard to Thurman. As she pursued enforcement of the zoning laws, she learned that the Prairie Grove police chief, Robin Casey, had received a misdemeanor conviction for child abuse several years ago. Hux tried to obtain further information about Casey's criminal record. During her activities to bring forth removal of construction equipment from Thurman's property, the city attorney, Boyce Davis, purportedly warned her to discontinue her pursuit of information surrounding the conviction. Hux further alleges that because the zoning laws were never enforced against her neighbor, it was impossible for her to sell her home within a reasonable time at a reasonable price.

On April 25, 1995, Police Chief Robin Casey was called to Prairie Grove High School regarding a student disturbance. When Casey arrived at the school, administrators informed him they had sent Nicholas Brandt home because he had assaulted a female student. Casey was called back to the school later in the day, after Brandt returned to the school and was again involved in an altercation. Casey arrested Brandt for disorderly conduct. With the help of state police trooper Chuck Webb,

Casey handcuffed Brandt and placed him in the patrol car for transportation. Trooper Webb rode with Casey and Brandt in the patrol car. Juvenile authorities informed Chief Casey that because of prior problems with Brandt, they wanted him to take Brandt to the Washington County Juvenile Detention Center. Brandt became unruly in the patrol car, and kicked the car door. Brandt and Casey's accounts of the subsequent events differ appreciably.

Brandt alleges that when he became unruly, Casey stopped the patrol car, yanked him out of the car by his feet, and dragged him into a gravel parking lot face down. He claims Casey picked him up and slammed him into the gravel, face first, while saying to him, "Maybe your mother would like some of this." Subsequently, Casey slammed his knees into Brandt's neck and back, and proceeded to "hogtie" Brandt. After returning to the patrol car and driving, Casey stopped the car a second time and subjected Brandt to additional forceful measures. Brandt alleges that the abusive treatment Casey inflicted on him caused back pain, numbness or lessened feeling in his hand for approximately a month, and chest pain.

Chief Casey recounts a different version of the events, set forth in his affidavit which accompanied appellees' motion for summary judgment. According to Chief Casey, Brandt became extremely violent in the patrol car while traveling to the juvenile detention center. He claims that Brandt maneuvered his body through his cuffed arms, kicked the doors of the patrol car, and banged his head violently on the screen separating the front and back seats of the car. Casey alleges that he pulled over, retrieved restraints from the trunk, and opened the back passenger door. At that time, Brandt kicked Casey in the stomach. Casey claims that in response to Brandt's violent behavior in the patrol car, as well as Brandt's kicking, he "restrained [Brandt] on the ground by placing my knee between his shoulders and neck and tried to grab his legs." By this time, Trooper Webb and Captain Jim Acker (an employee of the Washington County Sheriff's Office) had stopped to assist Casey. Additionally, Prairie Grove

police officer Darrel Hignite, who was off duty, saw the struggle and pulled over to offer assistance. With the above-described help, Casey alleges he was able to tie Brandt's feet together and place him in the back of the car. Brandt's feet were secured to the bottom of the cage divider, so he could not kick the doors again or sit up and hit his head on the divider.

Casey also explained that Brandt pulled free and again began banging his head on the screen and kicking. Casey pulled over the patrol car a second time. With Trooper Webb's assistance, Casey pulled Brandt from the patrol car while Brandt kicked at the officers. At this time, Casey hogtied Brandt and placed him in the car on his stomach, to prevent him from banging his head on the screen. Brandt once again freed himself and began banging his head on the screen. Rather than pull over a third time, Casey states he turned on the police siren and drove quickly to the juvenile detention center.

On June 20, 1995, Brandt appeared before an Arkansas juvenile court judge (Hon. Charles Williams) regarding the charges arising from the April 25, 1995 incident. Prior to the final disposition of the criminal proceedings against Brandt, Casey wrote a letter to Judge Williams accusing Brandt of what Brandt considers "numerous inflammatory and unproven charges." Similarly, Bain and Davis each sent a letter to Judge Williams which portrayed Brandt in a negative manner. All of these letters were sent only to the judge, and neither Brandt nor his criminal counsel were informed of the letters' existence or contents. Based on the letters sent to Judge Williams, Brandt alleges appellees Bain, Casey, and Davis deprived him of due process because appellees did not notify Brandt that they sent the letters to the judge, and Brandt was not afforded an opportunity to respond to the letters' complaints.

Appellants filed a civil rights lawsuit against appellees making several allegations pursuant to 42 U.S.C. § 1983, including: Chief Casey used excessive force to effectuate Brandt's arrest; Bain, Casey, and Davis deprived and conspired to deprive Brandt of due process by sending letters to the juvenile court judge presiding over Brandt's case without sending a copy to Brandt's criminal defense attorney; the City violated Hux's equal protection rights by refusing to enforce its zoning ordinances against her neighbor. Appellees filed for summary judgment on all claims. Appellants' response to the motion consisted of a three-page brief. Appellants did not submit affidavits, exhibits, or other evidence with their response. The district court granted the motion for summary judgment in its entirety, and judgment was entered in favor of appellees on all claims. The district court's decision rested in part on appellants' response to the motion for summary judgment, which the district court discussed as follows:

> Plaintiffs' brief in response to the motion for summary judgment is woefully inadequate. It barely touches on the issue of whether any constitutional violations exist and ignores the issue of qualified immunity. In fact, plaintiffs' entire brief in response to the motion is only three pages in length which includes both the caption and the signature. It contains little substance and is not helpful.

Appendix at 76-77 (December 7, 1998 District Court Order, at 17-18). The district court also noted the lack of citations in appellants' response brief.

## II.

"We review a district court's grant of summary judgment de novo, considering all evidence in a light most favorable to the nonmoving party." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party,

shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Johnson, 172 F.3d at 535. "We may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court." Johnson, 172 F.3d at 535.

III.

Appellants argue the district court erred in granting appellees' motion for summary judgment regarding the excessive force claim and denying their concurrently filed motion to amend the complaint. Appellants had requested leave to amend the complaint to add the charges against Chief Casey in his individual capacity.[3]

In moving for summary judgment, appellees maintained that the force Casey used to restrain Brandt was necessary to prevent Brandt from injuring himself or the officers transporting him. Chief Casey's affidavit, submitted as a supporting exhibit with appellees' motion for summary judgment, sets forth his recollection of the incident. Appellants did not submit any evidence–in the form of affidavits, depositions, or otherwise–in response to the motion. Rather, appellants rested on the pleadings, stating the evidence appellees had submitted was insufficient and did not require a response.

---

[3]Appellants titled their district court brief "Brief in Support of Response to Motion for Summary Judgment, and Motion for Permission to Amend Complaint to Include All Defendants in their Official Capacities." Joint Appendix, at 56-58. On appeal, appellants reposition themselves by making statements such as "appellant-plaintiff did not respond with affidavits, but rather requested the right to amend the complaint." Appellants' Brief, at 15. We consider appellants' position as it was presented to the district court.

Because appellants did not submit even a shred of evidence to contradict Chief Casey's affidavit, we are compelled to regard the Chief's version of the incident as uncontroverted. See generally Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) (Rule 56 contains no express or implied requirement that the moving party support its motion with affidavits or other evidence negating the opponent's claim); Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 427 (8th Cir. 1997) (when a motion for summary judgment is made, the nonmoving party may not rest on the complaint alone and "must introduce affidavits or other evidence to avoid summary judgment."). We therefore consider the excessive force claim using the uncontroverted facts set forth in Chief Casey's affidavit.

Excessive force claims "are analyzed under the Fourth Amendment, and the test is whether the amount of force used was objectively reasonable under the particular circumstances." Griener v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994). "When an arrestee flees or resists, some use of force by the police is reasonable." Griener v. City of Champlin, 27 F.3d 1346, 1355 (8th Cir. 1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Graham v. Connor, 409 U.S. 386, 396-97 (1989). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary..." is considered excessive. Graham, 490 U.S. at 396 (citation and internal quotation marks omitted). A court should not judge an officer's conduct in hindsight; rather, a court examining an excessive force claim should place itself in the shoes of a reasonable officer under the circumstances. See Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990).

The reasonableness evaluation, like that of other Fourth Amendment analyses, focuses on an objective inquiry: "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to

their underlying intent or motivation." Graham, 490 U.S. at 397 (emphasis added) (citation and internal quotation marks omitted). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." Moore v. Novak, 146 F.3d 531, 535 (8th Cir. 1998) (citation and internal quotation marks omitted). Additionally, if the complaining party's injuries are likely explained by the arrestee's own actions, the allegations cannot create a material fact issue as to whether the arresting officer used excessive force. See Greiner, 27 F.3d at 1355.

We conclude Chief Casey's account of the events indicates the force he used to detain Brandt was objectively reasonable, and that no genuine issues of fact pertaining to the reasonableness of his actions exist for trial.[4] Chief Casey described Brandt as an unruly and violent arrestee, which Brandt admitted in the statement of material facts he submitted. The police chief described his actions as necessary to prevent Brandt from harming himself and fleeing through a window or door in the patrol car. Under the standards set forth in Celotex, Brandt's failure to submit any evidence disputing these facts is fatal to his claim. Because Brandt failed to come forward with evidence to prove an essential element of his claim–that the force Casey used was unreasonable–we find summary judgment was properly granted on this issue. Given the above analysis, we also find the district court did not abuse its discretion in denying

---

[4]Indeed, one of appellants' statements in the appellate brief supports this conclusion: "If the Appellees set forth a prima facie case that the force used was reasonable, Brandt should be required to respond with affidavit or testimony on oath showing facts from which the claim of excessive force could reasonably prevail at trial, on pain of dismissal of his case." Appellants' Brief, at 17-18. This is precisely what the district court did, after studying Chief Casey's affidavit, in which he described the force he used as objectively reasonable. Yet, appellants chose not to respond with affidavits or testimony under oath.

the motion to amend, as there existed no cause of action against Casey in his individual capacity.

IV.

On appeal, Brandt argues the district court should have granted his motion to amend the complaint so he could correct pleading deficiencies in his claim that Bain, Casey, and Davis denied him due process by writing and delivering letters to the juvenile court judge.

"The Confrontation Clause of the Sixth Amendment guarantees to a defendant the opportunity for effective cross-examination of witnesses against him...." United States v. Triplett, 104 F.3d 1074, 1078 (8th Cir. 1997). It acts as a guarantee that in the proceedings at issue, the accused was able to fairly defend himself. See United States v. Molina, 172 F.3d 1048, 1059-60 (8th Cir. 1999). Bain, Casey, and Davis were not parties to the civil proceeding of the juvenile court and were under no constitutional or statutory obligation to send copies of the letter to Brandt. We decline to extend the scope of the right to include a cause of action against the parties offering information, whether in open court or by letter. If the juvenile proceedings contained constitutional infirmities, Brandt's appropriate course of action is appeal of the proceeding. We therefore find Brandt's claim as against Bain, Casey, and Davis fails as a matter of law. Similarly, we find no merit in Brandt's claim that appellants conspired to deny him rights. The juvenile court judge made a decision as to whether examination of these witnesses was warranted and whether he wished to consider the letters. Excluding the role of the juvenile court judge, what remains of appellant's claim is a conspiracy to write letters, which we decline to find actionable under these circumstances.

In Brandt's motion to amend before the district court, and in his argument on appeal, he neglected to explain how he would amend the complaint to save the claim. See Batra v. Board of Regents of the Univ. of Nebraska, 79 F.3d 717, 722 (8th Cir. 1996). We therefore find no abuse of discretion in the district court's denial of his motion to amend.

V.

Appellant Hux appeals the district court's ruling that the City's failure to enforce zoning laws against her neighbor violated her equal protection rights. She argues that summary judgment was inappropriate because neither party put forth proof on the matter.

The Equal Protection Clause "prohibits government officials from selectively applying the law in a discriminatory way." Central Airlines, Inc. v. United States, 138 F.3d 333, 334-35 (8th Cir. 1998) (citation omitted). It protects "fundamental rights," "suspect classifications," and "arbitrary and irrational state action." See Batra, 79 F.3d at 721. For example, "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." Batra, 79 F.3d at 721 (citations and internal quotation marks omitted). "[T]he key requirement is that plaintiff allege and prove unlawful, purposeful discrimination." Batra, 79 F.3d at 722.

In a similar section 1983 action, Gagliardi v. Village of Pawling, the plaintiff landowners had filed several claims, including an equal protection claim, against the defendants for their failure to enforce zoning laws against the plaintiffs' neighbors. 18 F.3d 188, 193 (2d Cir. 1994). The named defendants included the village, a zoning

board of appeals and its members, a planning board, a board of trustees, and a building inspector. The court of appeals affirmed the district court's dismissal of the equal protection claim, noting that to establish the necessary purposeful discrimination, a complaining party must allege similarly situated people have been treated differently. The court observed that the plaintiffs had made no allegations that the defendants would have enforced the zoning laws at the request of another resident similarly situated to plaintiffs. Therefore, their claim was insufficient as a matter of law.

We believe Hux's claim fails for similar reasons. In her complaint, she fails to allege any manner in which she experienced purposeful discrimination. Because she did not plead an essential element of her claim, appellees had no reason to put on proof supporting their motion for summary judgment. We therefore find Hux's equal protection claim fails as a matter of law.

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT