**Sandra PETERSON, Plaintiff,**

v.

**State of NORTH DAKOTA, By and Through the NORTH DAKOTA UNIVERSITY SYSTEM, and by and through Bismarck State College, Donna Thigpen, in her official capacity and in her personal capacity, and David Sitte in his official capacity and in his personal capacity, Defendants.**

Case No. A1–02–82.

United States District Court,
D. North Dakota,
Southwestern Division.

Jan. 3, 2003.

Charles L. Chapman, Chapman & Chapman, Bismarck, ND, for plaintiff.

Tag C. Anderson, Attorney General's Office, Bismarck, ND, for defendants.

### *MEMORANDUM AND ORDER*

HOVLAND, Chief Judge.

## I. INTRODUCTION

This is a civil rights action arising out of the termination of the plaintiff, Sandra Peterson, from her employment as an instructor at Bismarck State College on March 31, 2000. Before the Court is the defendants' motion for dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure. The parties have cited to materials outside of the pleadings and, therefore, the Court will treat the defendants' motion to dismiss as a motion for summary judgment. *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1005 (8th Cir.2000).

## II. BACKGROUND OF THE CASE

The plaintiff, Sandra Peterson, [hereinafter referred to as Peterson] was an instructor at Bismarck State College (BSC) who allegedly disclosed confidential student information to a classroom of students in January 1999. At the direction of BSC, Peterson apologized to the student publicly in February 1999. Peterson received a letter of reprimand from BSC in March 1999. She subsequently received a Notice of Intent to Dismiss from BSC on April 16, 1999. Peterson challenged the validity of the notice which she believed prompted defendants David Sitte, BSC's Interim Dean of Instruction, and Donna Thigpen, BSC's president, to solicit derogatory information and statements from others in order to bolster the case against her.

In May of 1999, Peterson received an Amended Notice of Intent to Dismiss from BSC that contained several new allegations. Thereafter, she received a letter of dismissal from President Thigpen on July 21, 1999. Peterson filed a request for reconsideration which the BSC Special Faculty Review Committee took under consideration. The Special Faculty Review Committee issued a report on September 24, 1999, and recommended that BSC not dismiss Peterson as an employee. However, President Thigpen remained steadfast in her belief that BSC had cause to terminate Peterson and Thigpen rejected the recommendation.

Peterson then filed a notice of appeal and a request for reinstatement pursuant to the North Dakota State Board of Higher Education Policy Manual. A formal evidentiary hearing before the BSC Standing Committee on Faculty Rights was convened on February 7, 2000. The Committee issued its findings on March 21, 2000, and concluded that BSC had not established by clear and convincing evidence that there was adequate cause to dismiss Peterson. The Committee recommended that Peterson not be dismissed. President Thigpen reviewed the Committee's findings, concluded that they were not supported by the record, and reiterated that

Peterson's dismissal was proper. After her dismissal, Peterson was provided a post-termination hearing through an appeal to the North Dakota State Board of Higher Education. An independent administrative law judge from the Office of Administrative Hearings conducted post-termination proceedings on behalf of the North Dakota State Board of Higher Education. The ALJ recommended that the Board uphold the actions of BSC in terminating Peterson's employment. The North Dakota State Board of Higher Education agreed and upheld Peterson's dismissal from BSC.

Peterson initiated this civil rights action on July 18, 2002. Peterson alleges in her complaint that she was dismissed by BSC despite a lack of clear and convincing evidence of any wrongdoing on her part and in violation of her constitutional rights. She also alleges that she was dismissed in retaliation for her criticisms of BSC's administration. In early March 1999, in a letter and later during a faculty meeting, Peterson had criticized the administration's removal of a department chair. Peterson maintains that she was singled out for termination because of this criticism and because of her prominence in campus politics. She seeks $2,500,000 in damages plus costs, disbursements and reasonable attorney's fees.

## III. LEGAL DISCUSSION

### A. STANDARD OF REVIEW

The Court will grant a motion for summary judgment if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (explaining that the Court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor). If the defendant can show that there is no issue as to any material fact, then the plaintiff must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the plaintiff's position is insufficient-the facts must generate evidence from which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. CLAIMS AGAINST THE STATE OF NORTH DAKOTA AND DEFENDANTS SITTE AND THIGPEN IN THEIR OFFICIAL CAPACITIES

A claim under 42 U.S.C. § 1983 requires that the persons inflicting the alleged injury act under color of state law. 42 U.S.C. § 1983 only authorizes damage suits against "persons" for deprivation of federal rights under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

The Eleventh Amendment bars private parties from suing a state in federal court. See *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir.1997) (*citing Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) and *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)); *Dover Elevator Co. v. Arkansas State University*,

64 F.3d 442, 446 (8th Cir.1995) (concluding that a state agency was immune from suit in federal court). Section 1983 damage claims against state officials acting in their official capacities are likewise barred, either by the Eleventh Amendment or, because in their official capacities, state officials are not "persons" for § 1983 purposes. *Murphy v. State of Arkansas*, 127 F.3d 750, 754. *See also Dover Elevator Co. v. Arkansas State University*, 64 F.3d 442, 447.

■ It is well-established that neither a State nor its officials acting in their official capacities are "persons" under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In contrast, Section 1983 damage claims against state officials acting in their individual capacities are not necessarily barred. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

■ As a result, Peterson's official capacity actions must be treated as actions against the state and are clearly barred by the Eleventh Amendment. The plaintiff failed to submit any legal argument or legal basis to rebut the defendants' motion to dismiss this particular claim. There is simply no legal basis for a claim against the State of North Dakota or against defendants David Sitte and Donna Thigpen in their official capacities. Therefore, the only issue that remains before the Court is whether Peterson can sustain her 42 U.S.C. § 1983 claims against defendants Thigpen and Sitte in their personal capacities.

## C. CLAIMS AGAINST DEFENDANTS SITTE AND THIGPEN IN THEIR PERSONAL CAPACITIES

The defendants maintain that David Sitte and Donna Thigpen are immune from suit under 42 U.S.C. § 1983 based upon the doctrine of qualified immunity. Peterson argues that dismissal is inappropriate at this stage because there are questions of fact integral to the resolution of the qualified immunity issue.

Qualified Immunity

■ Qualified immunity shields state officials from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Holloway v. Reeves*, 277 F.3d 1035, 1037 (8th Cir.2002) citing *Doe v. Gooden*, 214 F.3d 952, 954 (8th Cir.2000). Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. See *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir.2002) (explaining that it is still incumbent on the plaintiff to show that the law the defendant allegedly violated is clearly established). The purpose of qualified immunity is to allow public officials to perform their duties in a manner they believe to be correct without fear for their own financial well being. *Id.* "Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly established law." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "An official loses immunity if the law he violated was clearly established at the time of the violation, and the applicability of the law to his particular action was evident." *Id.* In other words, the qualified immunity defense fails if the official violates a clearly established constitutional or statutory right of which a reasonable person would have known. The validity of a qualified immunity defense depends not on whether a defendant acted wrongly, but whether a reasonable person would know that their actions deprived another of a known and

clearly established constitutional or statutory right. The contours of a right must be sufficiently clear so that a reasonable official would understand that what he or she is doing violates that right before a defense of qualified immunity is unavailable. *Holloway v. Reeves,* 277 F.3d 1035, 1037 (8th Cir.2002).

Peterson alleges in her complaint that defendants Sitte and Thigpen violated her substantive due process rights, her procedural due process rights, and her First Amendment right to free speech and association. The Court will first address the due process claims.

### 1) SUBSTANTIVE DUE PROCESS

■ Peterson first claims that the defendants violated her rights protected by the due process clause of the Fourteenth Amendment. In *Singleton v. Cecil,* 176 F.3d 419, 424 (8th Cir.1999), the Eighth Circuit stated as follows:

> The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law...." This clause has two components: the procedural due process and the substantive due process components. "Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated," and "[t]he possession of a protected life, liberty, or property interest is ... a condition precedent" to any due process claim. "[W]here no such interest exists, there can be no due process violation." Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a substantive due process claim.

■ Substantive due process protects those fundamental rights and liberties which are deeply rooted in this nation's history and tradition and so implicit in the concept of ordered liberties, such that neither liberty nor justice would exist if they were sacrificed. *Singleton v. Cecil,* 176 F.3d 419, 425. Substantive due process is generally limited to matters relating to a fundamental right, i.e., marriage, family, procreation, right to bodily integrity. *See Abeyta By and Through Martinez v. Chama Valley Independent School Distr., No. 19,* 77 F.3d 1253, 1257 (10th Cir.1996) (citing *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). Courts have generally been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The United States Supreme Court has, as a general rule, been unwilling to expand the concept of substantive due process beyond these core areas.

■ In this case, Peterson's claim of substantive due process violations fails to meet this high standard. Peterson's claim that her substantive due process rights were violated also lacks the specificity required to overcome the defendants' defense of qualified immunity. *See Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ It is well-established that state-created employment relationships or contract rights do not generally warrant substantive due process protection. See *de Llano v. Berglund,* 142 F.Supp.2d 1165, 1169 (D.N.D.2001) (noting agreement between the Second, Fourth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits that tenured public employment bears little resemblance to other rights and property interests that have been deemed funda-

mental under the Constitution); *see also Singleton v. Cecil,* 176 F.3d 419, 425–26 (8th Cir.1999) (noting the Supreme Court's suggestion "that a public employee's interest in continued employment is not so 'fundamental' as to be protected by substantive due process").

The majority rule is that state-created employment or contract rights are generally not entitled to the protections of substantive due process. Peterson's state-created employment status simply does not entitle her to substantive due process protection. Further, Peterson has not shown that the defendants deprived her of a clearly established constitutional or statutory right. Peterson has a number of state policies and procedures that do provide overall protection for her due process rights, but her state-created contract rights as a BSC employee do not trigger the protections of substantive due process. More important, a reasonable person in defendant Sitte's or Thigpen's position would have no reason to believe that his or her actions deprived Peterson of a clearly established constitutional or statutory right. Peterson's claim of a substantive due process violation is devoid of merit.

### 2) PROCEDURAL DUE PROCESS

█ A procedural due process claim is quite different than a substantive due process claim. *See de Llano v. Berglund,* 142 F.Supp.2d 1165, 1169 (D.N.D.2001) To assert a procedural due process claim, the plaintiff must initially demonstrate that she was deprived of some "life, liberty, or property interest" arising under state law and, if successful, the plaintiff must then establish that she was deprived of that property interest without sufficient process. *Krentz v. Robertson,* 228 F.3d 897, 903 (8th Cir.2000).

█ The property right at issue in a procedural due process claim must have been created by an independent source such as state law rather than by the Constitution. *Riggins v. Board of Regents of the University of Nebraska,* 790 F.2d 707, 710 (8th Cir.1986). Although the property right must derive from state law, the amount of process due is judged by reference to the federal Constitution rather than by any reference to state law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In other words, Peterson must prove a protected property right by reference to state law, but the amount of process that she must be accorded is judged by federal law rather than state law.

█ In this case, there does not appear to be any dispute that Peterson had a protected property right in her job as an instructor at BSC that entitled her to procedural due process. *See Batra v. Board of Regents of the University of Nebraska,* 79 F.3d 717, 720 (8th Cir.1996). The Eighth Circuit has made it clear that public employees are entitled to procedural due process when they are fired from positions in which they have a legitimate expectation of continued employment. *Holloway v. Reeves,* 277 F.3d 1035, 1038 (8th Cir.2002). Therefore, the issue becomes whether Peterson received the process that she was due under federal law.

█ The United States Supreme Court has made it expressly clear that the essential requirements of due process are notice and an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Irrespective of what rights Peterson may enjoy under state law, she was entitled to oral or written notice of the charges against her, an explanation of the employer's evidence against her, and an opportunity to be heard and present her side of the story. *Id.* A review of the record reveals that there is no question

that Peterson was afforded the essential requirements of due process.

In a procedural due process claim, the focus is not on whether an individual has been denied a constitutionally protected interest for unfair, improper, and otherwise wrongful reasons. Rather, the focus is on the adequacy of the state procedures in place for the protection of such interests. See *Strasburger v. Board of Education,* 143 F.3d 351, 358 (7th Cir.1998). Peterson received a pre-termination hearing and she also invoked a post-termination process provided for by the State after her discharge. Peterson cannot assert that she did not receive more process than what is constitutionally required. Instead, she contends that the initial decision-makers at BSC were biased; that they solicited performance concerns in addition to Peterson's wrongful disclosure of confidential student information; and that President Thigpen ignored the recommendations of two faculty committees.[1]

It is well-established that so long as there are adequate state procedures available in which the employee can seek redress, due process is satisfied. See *McDaniels v. Flick,* 59 F.3d 446 (3rd Cir. 1995) ("[I]n the case of an employment termination case, 'due process [does not] require the state to provide an impartial decision-maker at the pre-termination hearing. The State is obligated only to make available the means by which the employee can receive redress for the deprivations.'") See *Bell v. City of Demopolis, Ala.,* 86 F.3d 191 (11th Cir.1996) (no valid due process claim based upon alleged biased post-termination decision makers where state, court review was available); *Fields v. Kelly,* 986 F.2d 225 (8th Cir.1993) (adequate post-deprivation remedy avail-

able under North Dakota law through application for writ of mandamus). *Bremiller v. Cleveland Psychiatric Institute,* 879 F.Supp. 782, 791 (N.D.Ohio, 1995). ("Even if plaintiff possessed a property right in continued employment with CPI, she fails to demonstrate the inadequacy of state remedies, i.e., a lawsuit in the Ohio Court of Claims, in compensating her for her losses."); *Dunn v. Town of Emerald Isle,* 722 F.Supp. 1309 (E.D.N.C.1989) (no due process violation for alleged constructive discharge where adequate remedies were available in state court).

The record reveals, and it is undisputed, that Peterson received both a pre-termination hearing and post-termination review process. In fact, Peterson concedes that she had an opportunity to present her case before the BSC Standing Committee on Faculty Rights and the North Dakota State Board of Higher Education. Peterson contends that her procedural due process rights were violated when President Donna Thigpen ignored the decisions of the BSC Special Faculty Review Committee and the Standing Committee on Faculty Rights and relied upon after-the-fact evidence in support of her decision to terminate Peterson. However, there is nothing in the record to suggest that Peterson received less due process than what is constitutionally required under federal law. The undisputed facts establish that Peterson received ample due process and more than sufficient notice and an opportunity to be heard and to respond to the charges against her.

The record establishes that Peterson was afforded review as provided for by the policies of the North Dakota State Board of Higher Education. *See Samuels v.*

---

1. To the extent Peterson asserts that the defendants did not comply with Bismarck State College and the North Dakota State Board of Higher Education policies, such claims are not cognizable under 42 U.S.C. § 1983. *See Holloway v. Reeves,* 277 F.3d 1035, 1038 (8th Cir.2002).

*Meriwether,* 94 F.3d 1163, 1166 (8th Cir. 1996) (explaining that "procedural due process generally requires that a hearing before an impartial decision maker be provided at a meaningful time, and in a meaningful manner"). The matter was reviewed by two BSC faculty committees. More important, the matter was reviewed by an impartial decision maker, i.e., an independent administrative law judge from the Office of Administrative Hearings, who conducted post-termination proceedings on behalf of the North Dakota State Board of Higher Education. The ALJ recommended that the Board uphold the actions of BSC to terminate Peterson and the State Board of Higher Education agreed. Thus, Peterson received procedural due process that more than satisfied the due process requirements of federal law. Peterson also complains that she was only afforded a short presentation before the North Dakota State Board of Higher Education and that the ALJ's review was conducted on paper. However, Peterson has not demonstrated that this post-termination review process was somehow constitutionally deficient. There is no dispute that Peterson had ample opportunity to raise allegations of bias or impropriety on the part of defendants Sitte and President Thigpen throughout the pre-termination and post-termination process. Peterson unquestionably had ample notice of the charges made against her and had several opportunities to be heard which clearly establishes that she received procedural due process that satisfies the due process requirements of Loudermill. The Eighth Circuit has, on several occasions, rejected procedural due process complaints in instances in which far less procedural due process was afforded to the complainant than what Peterson received in this case.

▮▮▮ The Court concludes, as a matter of law, that there are no questions of material fact regarding the procedural due process that Peterson was afforded. This Court must apply federal standards to determine whether Peterson received adequate procedural due process which essentially includes the requirements of notice and an opportunity to be heard. The record reflects that Peterson has received adequate procedural due process as required under federal standards. The controlling question is whether there has been compliance with federal due process standards and the Court concludes that there has been. Even assuming for the sake of argument that Peterson is correct in the contention that President Thigpen was wrong to ignore the recommendations of the two BSC Faculty Committees, that alone is of no assistance to her because she did receive all the procedural due process to which she was entitled under the Constitution. More important, a reasonable person in defendants Sitte's or Thigpen's position would have no reason to believe that his or her actions deprived the plaintiff of a clearly established constitutional or statutory right. As such, the defense of qualified immunity is available and shields the defendants from civil liability. Peterson's claim of a violation of procedural due process is without merit and warrants dismissal.

### 3) FIRST AMENDMENT CLAIMS

Finally, Peterson claims that her firing was in retaliation for the exercise of her First Amendment Rights; namely, a letter of criticism and other criticisms expressed during a faculty meeting in March of 1999 concerning the BSC administration's removal of the department chair. The defendants assert that Peterson's criticism of BSC's administration was not speech protected by the First Amendment. Peterson contends that her statements concerning the actions of BSC's administration involved a matter of public concern which are afforded constitutional protection. Additionally, Peterson asserts that there is a

clear inference that retaliation for her criticism was a substantial motivating factor in her dismissal as an employee at BSC.

 The standards for an evaluation of First Amendment claims are well-settled. It is incumbent upon the plaintiff to establish that the First Amendment protects the speech at issue and that the protected speech was a substantial factor in the adverse employment action. *Bausworth v. Hazelwood School District,* 986 F.2d 1197, 1198 (8th Cir.1993).

 In determining whether Peterson's speech was protected, the Court must first inquire as to whether her speech can be "fairly characterized as constituting speech on a matter of public concern." *Sparr v. Ward,* 306 F.3d at 594 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). If so, Peterson's right to comment on a matter of public concern must be balanced with BSC's interest in "promoting the efficiency of public service it performs through its employees." *Id.* (quoting *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).) Both parts of the Connick–Pickering inquiry are questions of law for the Court to decide. *Id.* Thus, Peterson must first establish that her speech addressed matters of public concern.

 Matters of public concern are those matters of political, social, or other concern to the community. See *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the entire record. 461 U.S. at 147–148, 103 S.Ct. 1684. When an employee's speech is purely job-related, it will generally not be considered a matter of public concern. See *Sparr v. Ward,* 306 F.3d at 594. As the Eighth Circuit recently explained: Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment. It is not enough that the topic of an employee's speech is one in which the public might have an interest. [The Court] must determine whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests. *Id.*

 The law is well-settled and only if a speech meets this standard does the court then perform the balance inquiries mandated by Connick–Pickering. If the plaintiff prevails on the issue of whether her speech addresses matters of public concern, then she must demonstrate that the speech was the motivating factor in her discharge or termination. Finally, the defendant then has the chance to show that it would have made the same decision regardless of the speech. See *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In this case, Peterson signed a letter protesting the removal of a department head at BSC. Peterson later attended a meeting where she voiced her disapproval of this administrative decision. The record does not reveal the actual content or substance of Peterson's criticism that allegedly precipitated her dismissal. It simply indicates that Peterson's comments were prompted by what she considered an unfair administrative action. Presumably, her comments related to institutional morale, performance evaluations, her confidence in her co-worker, and/or her disagreement with her co-worker's demotion. In other words, Peterson's grievance was internal in scope and purely job-related, and did not directly affect the community at large.

The context of Peterson's comments is also telling. The letter signed by Peterson was directed to BSC's administration.

The record indicates that the meeting at which she expressed her discontent was open to BSC faculty. The record fails to reveal that Peterson ever intended to bring this internal administrative decision to the public's attention. *See Sparr,* 306 F.3d at 595 (recognized that "while a public employee does not give up her right to free speech simply because her free speech is private, the internal nature of [the employee's speech] is a factor to be considered"). Additionally, there is nothing in the record to demonstrate that Peterson was speaking out as a private citizen on a matter of public concern. Therefore, it is unnecessary to address the second part of the Connick–Pickering inquiry. It is clear from the record that Peterson's speech or criticisms of the BSC administration does not fall under the protection of the First Amendment.

██ The Court concludes, as a matter of law, that Peterson has not shown that defendants Sitte or Thigpen deprived her of a clearly established constitutional or statutory right, or that a reasonable person in Sitte's or Thigpen's position would have known that their actions deprived the plaintiff of an established right in this instance. The Court further concludes that none of the speech relied upon by Peterson to support her allegations of First Amendment violations passes the Connick–Pickering public concern requirement. As such, the speech is not entitled to First Amendment protection. Even assuming the plaintiff could pass the Connick–Pickering balancing test, the Court would further conclude from the record that the speech was not a motivating factor in her discharge and that BSC would have terminated Peterson irrespective of her criticisms of the BSC administration. The claim of a First Amendment violation is devoid of merit.

## IV. CONCLUSION

In this case, there is no legal basis for the claims asserted against the State of North Dakota, or for the claims asserted against defendants David Sitte and Donna Thigpen in their official capacities. The only issue to be resolved is whether the plaintiff, Sandra Peterson, can sustain her 42 U.S.C. § 1983 claims against defendants Thigpen and Sitte in their personal capacities. For the reasons outlined above, the Court concludes, as a matter of law, that the claims of substantive due process violations, procedural due process violations, or violations of free speech protected by the First Amendment, are without merit. Peterson was afforded more than adequate notice and an opportunity to be heard as required by federal law and the Constitution. In addition, Peterson's criticisms of the BSC administration do not pass the Connick–Pickering public concern requirement and are not entitled to First Amendment protection. There are adequate remedies available in state court to address the allegations of wrongdoing in this case. However, the civil rights claims under 42 U.S.C. § 1983 are without merit and warrant dismissal.

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss in its entirety. The civil rights claims against the State of North Dakota are dismissed with prejudice. The claims against defendants David Sitte and Donna Thigpen in both their official and personal capacities are also dismissed with prejudice.

IT IS SO ORDERED.